UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
DELCO ELECTRICAL CORP., et al.,

                             Plaintiffs,                    FINDINGS OF FACT
                                                       <u>AND CONCLUSIONS OF LAW</u>

       -against-                            CV 13-7207 (LDW) (GRB)

WELLS FARGO CAPITAL FINANCE,
INC. and WELLS FARGO BANK, N.A.,

                             Defendants.
--------------------------------------------------X

WEXLER, District Judge

       Plaintiffs Delco Electrical Corp., SAT Contracting, Inc., GM Data Communications, Inc., Expertel Communications Ltd., Starcom Communication Services, Inc., Data Comm Consulting Group, Inc., and Weather Wise Conditioning Corp. ("Weather Wise") (collectively, "Plaintiffs") assert claims under New York Lien Law Article 3-A and for common-law conversion against defendants Wells Fargo Capital Finance, Inc. ("WFCF") and Wells Fargo Bank, N.A. ("WF") (collectively, "Defendants") seeking recovery for telecommunications-related work performed as subcontractors on various New York City public schools. Having concluded a bench trial, the Court makes the following findings of fact and conclusions of law.

## I. BACKGROUND AND FINDINGS OF FACT

       The parties have stipulated to the essential material facts in this action, as reflected in their Post Trial Joint Stipulated Findings of Fact ("JS"), which is incorporated herein. *See* Docket Entry 58. It is undisputed, *inter alia*, that: (1) Teltronics, Inc. ("Teltronics") contracted with the New York City Department of Education ("DOE") (the "DOE Contract") and IBM (the

"IBM Contract") to provide various telecommunications-related products and/or services at hundreds of New York City public schools (collectively, the "DOE Projects"), JS ¶¶ 20-21, 24-25; (2) Plaintiffs performed improvements on numerous DOE public school buildings as subcontractors to Teltronics on the DOE Projects from 2007 to 2011 pursuant to purchase orders issued to them by Teltronics, JS ¶¶ 10, 22, 26-29, 34; Trial Transcript ("Tr.") 34; (3) Plaintiffs are owed in aggregate more than $1.7 million, without interest, for subcontract work they performed for Teltronics on the DOE Projects, JS ¶¶ 58-66; (4) Teltronics had a lending relationship with WFCF, through a revolving credit loan and term loan facility, governed by various documents including a Credit Agreement, dated May 31, 2007 (the "Credit Agreement") and a Deposit Account Control Agreement, dated June 1, 2007 (the "Lock Box Account Control Agreement"), JS ¶¶ 2, 15-19; Tr. 84-93; (5) Teltronics had a banking relationship with WF, as successor-in-interest to Wachovia Bank, N.A. ("Wachovia"), JS ¶¶ 3, 7; (6) Defendants are affiliated companies, both wholly-owned subsidiaries of Wells Fargo & Company, JS ¶¶ 4, 6; Tr. 156-57; (7) from in or before January 2007 through January 18, 2013, Teltronics maintained an account at Wachovia and then at WF, as successor to Wachovia, exclusively for receiving payments from Teltronics customers (the "Lock Box Account"), JS ¶¶ 12-14, 30-32; (8) the Lock Box Account received more than $16 million as payment on the DOE Projects from IBM, the New York City School Construction Authority ("SCA"), and the New York City Department of Finance ("DOF"), JS ¶¶ 33, 37-38, 40-45, 49, 53-57; (9) WF had 100% control over the Lock Box Account, which was subject to the terms of the Lock Box Account Control Agreement, JS ¶¶ 49-50; (10) from June 1, 2007 through on or about February 21, 2012 (when loans to Teltronics were paid off), WFCF received as "daily sweeps" whatever funds were deposited in

the Lock Box Account as payment against loans to Teltronics ("Teltronics loans")—payments far exceeding the $1.7 million Plaintiffs are owed for subcontract work they performed for Teltronics on the DOE Projects—and WF received fees for its services in managing the Lock Box Account, JS ¶¶ 46, 48; Tr. 189-90; (11) WFCF did not use or apply those funds to pay Plaintiffs for the work they performed on the DOE Projects, JS ¶ 47; (12) neither WF nor WFCF received nor maintained records identifying what portion, if any, of any deposit made into the Lock Box Account represented payment for work Plaintiffs performed for Teltronics at any specific public school where work was performed under the DOE Contract or IBM Contract, JS ¶ 49; (13) Teltronics filed a voluntary bankruptcy petition on June 27, 2011 (the "Teltronics Bankruptcy Case"), JS ¶ 8; (14) each of the Plaintiffs, except for Weather Wise, was a member of the Official Committee of Unsecured Creditors ("Creditors Committee"), JS ¶ 9; (15) each of the Plaintiffs was a creditor and party-in-interest, with an allowed claim against Teltronics for work performed for Teltronics on the DOE Projects, JS ¶¶ 9-10, 51; (16) Plaintiffs had notice of the "Final Order" issued in the Teltronics Bankruptcy Case and did not object to WFCF's prepetition claims or assert a claim or demand on WFCF in response thereto, JS ¶¶ 67, 70-71; (17) Plaintiffs had notice of the "Confirmation Order" issued in the Teltronics Bankruptcy Case and did not object thereto,  JS ¶¶ 72-74; (18) an entity named Forerunner was the successful bidder in the Teltronics Bankruptcy Case for the DOE Contract, JS ¶¶ 35-36; (19) Teltronics discontinued all work on the DOE Contract as of February 17, 2012, and Forerunner performed work through and including December 31, 2015, JS ¶ 36; and (20) the IBM Contract was renewed and extended through September 20, 2013, JS ¶ 24.

Based on these facts, Plaintiffs assert claims under New York Lien Law Article 3-A and for common-law conversion, seeking $1,700,878.16, plus interest, costs and disbursements, and attorney's fees. Although Defendants concede that Plaintiffs performed improvements at more than 58 DOE buildings, that payment by the DOE made into the Lock Box Account exceeded the amount Plaintiffs are owed for their subcontract work, that WFCF did not file a "Notice of Lending" under New York Lien Law § 73, and that funds in the Lock Box Account were diverted by WFCF to pay Teltronics loans, *see* Defendants' Post Trial Memorandum of Law, at 1-2, they maintain (as their witnesses testified at trial) that they were ignorant of the New York Lien Law, *see* Tr. 94-96, 128-31, 160, 177, and contend that they have complete defenses to Plaintiffs' claims. Despite their claimed ignorance of the Lien Law, WFCF was aware that Teltronics was a telecommunications contractor and that Teltronics contracts serving as collateral for Teltronics loans included contracts for construction of New York City public schools; nevertheless, WFCF claimed to have focused on maintenance contracts. Tr. 119-20. Regarding their defenses, defendants argue (1) that Plaintiffs' claims against WFCF are barred by res judicata and by waiver and release based on both the Final Order and the Confirmation Order issued in the Teltronics Bankruptcy Case; (2) that the Lien Law claim is barred by the statute of limitations; (3) that the conversion claim cannot be maintained because it is not independent of the time-barred Lien Law claim, and that, in any event, it is barred by the statute of limitations; (4) that WF cannot be liable for diversion because it was not a knowing participant in any diversion; and (5) that Plaintiffs' claims are barred by laches.

## II.  DISCUSSION AND CONCLUSIONS OF LAW

A.  Waiver/Release and Res Judicata Defenses

Defendants argue that Plaintiffs' claims against WFCF are barred by waiver and release based on both the Final Order and the Confirmation Order issued in the Teltronics Bankruptcy Case.  Plaintiffs argue that neither of these orders bars their claims against WFCF.

As for the Final Order, that order authorized Teltronics, *inter alia*, to obtain post-petition financing from WFCF.  Paragraph 14 of the Final Order established deadlines for the Creditors Committee or "*any other party in interest*" to object to any prepetition claims that WFCF had against Teltronics *and* to assert any claims against WFCF.  Defendants argue that each of the Plaintiffs qualified as "*any other party in interest*" for purposes of the waiver/release provision.  Thus, Defendants maintain, Plaintiffs waived/released any claims that they may have had individually against WFCF, including any claim related to funds from the DOE Projects deposited in the Lock Box Account at WF and transferred by WF to WFCF.  Plaintiffs argue that paragraph 14's protection of non-debtors must be narrowly construed and, as such, does not bar third-parties (such as Plaintiffs) from bringing claims against non-debtors (such as WFCF).

The Court concludes that paragraph 14 does not preclude Plaintiffs' claims against non-debtor WFCF.  Claims that the Creditors Committee or parties-in-interest could have asserted against WFCF *on behalf of the bankruptcy estate* are distinct from those claims each of the Plaintiffs held on its own behalf against WFCF–such as those concerning "trust" funds paid into the Lock Box Accounts on the DOE Projects.  Plaintiffs did not knowingly and deliberately waive their individually-held claims against WFCF, as paragraph 14 did not provide sufficient

notice that such individually-held claims were subject to that provision. Thus, Plaintiffs' claims against Defendants were not waived/released by the Final Order.

As for the Confirmation Order, Defendants maintain that they relied on the Confirmation Order and Plaintiffs' failure to object to it. Defendants refer to language providing, in relevant part, that Teltronics, "on behalf of itself and its successors and assigns, including without limitation the Debtor's Estate, . . . absolutely, unconditionally and irrevocably releases . . . [WFCF], and its successors and assigns, and its . . . affiliates . . . from all . . . claims, counterclaims, defenses, rights of set off, demands, and liabilities whatsoever." Contrary to Defendants' argument, the Confirmation Order simply does not bar Plaintiffs' claims herein. Rather, it bars claims by Teltronics and the "Debtor's Estate."

Defendants also argue that Plaintiffs' claims are barred by res judicata, in that Plaintiffs' claims arise out of the same set of facts as their claims in the Teltronics Bankruptcy Case, all of which were subject to the provisions of the Final Order and the Confirmation Order. As noted above, Plaintiffs' claims herein are not subject to the Final Order and the Confirmation Order. Nor do they arise from the same facts and circumstances as any claim in the Teltronics Bankruptcy Case.

Accordingly, Plaintiffs' claims are not barred by waiver and release or res judicata.

B.  Lien Law Claim

Defendants argue that Plaintiffs' Lien Law claim is barred by the one-year statute of limitations in § 77(2) of the Lien Law. *See* N.Y. Lien Law § 77(2). Defendants have the burden of establishing this affirmative defense. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a

defendant must plead and prove." (citing Fed. R. Civ. P. 8(c)(1))).  Section § 77(2) provides, in

relevant part, that an action under Lien Law Article 3-A

> may be maintained at any time during the . . . public improvement
> . . . .  No such action shall be maintained if commenced more than
> one year after the completion of such improvement or, in the case
> of subcontractors or materialmen, after the expiration of one year
> from the date on which final payment under the claimant's contract
> became due, whichever is later.

N.Y. Lien Law § 77(2).  Thus, the one-year limitations period began to run from the *later* of  "the

completion of [the public] improvement" *or* "the date on which final payment under the

[subcontractor's] contract became due."

Defendants maintain that the only contracts between Plaintiffs and Teltronics were

purchase orders, resulting in the statute of limitations being measured from the *later* of the

completion of the subcontract work pursuant to a particular purchase order *or* when payment was

due on the invoice generated upon completion of that specific work.  Thus, according to

Defendants, the one-year limitations period began to run no later than 2011, by which time

Plaintiffs had completed their subcontract work and payment to each became due, and the one-

year period expired before this action was filed in state court on November 20, 2013.  Plaintiffs

argue that the one-year limitations period began to run not when the subcontract work was

completed, but when the projects of the DOE Contract and IBM Contract were completed.

According to Plaintiffs, those projects were not completed more than one-year before this action

was commenced.

Contrary to Defendants' contention, "completion of [the public] improvement" within the

meaning of Lien Law § 77(2) refers to completion of the project, not merely completion of a

subcontractor's work. A subcontractor must commence an action to impress the trust on funds within one year from the time the general contractor completes the project, not from the time the subcontractor last furnishes labor or materials. *See, e.g.*, *In re Grosso*, 9 B.R. 815, 822 (Bankr. N.D.N.Y. 1981) ("This Court reads the New York cases which have construed the phrase '. . . after the completion of such improvement' in actions brought under [§] 77 of the Lien Law to mean at the completion of the entire improvement or undertaken project."); *N. Structures, Inc. v. Union Bank*, 57 A.D.2d 360, 368, 394 N.Y.S.2d 964, 970 ("The one-year period . . . begin[s] to run . . . from the date of completion of all work."), *amended by* 58 A.D.2d 1042, 396 N.Y.S.2d 1021 (4th Dep't 1977); *Forest Elec. Corp. v. Century Nat'l Bank & Trust Co.*, 70 Misc. 2d 190, 191, 333 N.Y.S.2d 644, 646 (Sup. Ct., N.Y. Cnty. 1970) ("Article 3A of the Lien Law was designed to create trust funds to assure payment of subcontractors, architects, engineers, surveyors, laborers and materialmen. Obviously their respective rights to the trust funds cannot be fully ascertained until completion of the entire improvement." (citations omitted)); *Wynkoop v. Mintz*, 17 Misc. 2d 1093, 1096, 192 N.Y.S.2d 428, 431-32 (Sup. Ct., Kings Cnty. 1958) ("I cannot agree with defendants' contention that the one-year period of limitation began to run from the last day plaintiff [subcontractors] furnished labor or materials . . . . When [the Legislature] said 'one year after the completion of the improvement on account of which the claim arose', in my opinion it meant one year after *completion of the project*. This is a date readily ascertainable especially in a public improvement. I do not believe the Legislature meant to have the period of limitation start to run merely after partial completion on various dates, as contended by defendants.") (emphasis in original). In this case, completion of the public improvement refers either broadly to completion of all improvement work under the DOE and/or IBM Contracts, as

Plaintiffs argue, or more narrowly to completion of all improvement work at a specific public school building under the DOE and/or IBM Contracts. The Court agrees with Plaintiffs that the broader interpretation applies. In any event, under either interpretation, Defendants have not proven their defense. Defendants have not established that improvement work under the DOE and/or IBM Contracts was completed more than one year before this action was commenced. Indeed, the parties stipulated that Teltronics discontinued all work under the DOE Contract as of February 17, 2012, and that the IBM Contract was renewed and extended through September 20, 2013. Nor have defendants sufficiently shown that all improvement work under the DOE and/or IBM Contracts was completed at specific public school buildings (those at which Plaintiffs performed subcontract work) more than one-year before this action was commenced. Given that Defendants have the burden of proof, the Court concludes that Defendants have failed to establish this defense.

C. Conversion Claim

Defendants argue that Plaintiffs cannot maintain a conversion claim, and that Plaintiffs assert this claim only because their Lien Law claim is barred by a one-year statute of limitations. Plaintiffs argue that the Lien Law is not the exclusive remedy for a subcontractor seeking recovery of trust fund money. While Defendants concede that the Lien Law is not an exclusive remedy, they argue that Plaintiffs' conversion claim fails because it is not *independent* of the Lien Law claim. Plaintiffs respond that their conversion claim is independent and distinct from the Lien Law claim.

Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone

else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006). The "[t]wo key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Id.* at 50 (citations omitted).

Plaintiffs have demonstrated that payments on the DOE Projects in excess of the amounts owed to Plaintiffs for their subcontract work were deposited in the Lock Box Account during the relevant period. By virtue of the Lien Law, those payments were trust fund money, over which Plaintiffs had an interest as beneficiaries. Lien Law Article 3-A is "designed to protect subcontractors . . . who expend labor or extend financing in construction projects, by impressing with a trust any funds paid to a contractor or received by an owner in connection with an improvement of real property in the state." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 695 (2d Cir. 2010) (citing N.Y. Lien Law § 71(5)). "[A] trust arises automatically by operation of law when fees are paid to the contractor or received by the owner in connection with an improvement of real property." *Id.* Notably, the statute of limitations in § 77(2) "is considered to be a procedural, rather than substantive condition to the enforcement of a claim." *In re Tripp*, 189 B.R. 29, 35 (Bankr. N.D.N.Y. 1995) (citing *Davis & Warshow, Inc. v. S. Iser, Inc.*, 30 Misc. 2d 528, 539, 220 N.Y.S.2d 818, 830 (Sup. Ct., N.Y. Cnty. 1961)). Consequently, expiration of the statute of limitations merely bars the Lien Law remedy and does not extinguish the substantive right, as the trust continues until all claims for services and material on the improvement have been paid. *See In re Tripp*, 189 B.R. at 35.

Plaintiffs have also demonstrated that Defendants exercised dominion and control over those trust funds, receiving them in the Lock Box Account and transferring them to WFCF,

pursuant to the Credit Agreement and Lock Box Account Control Agreement, in derogation of Plaintiffs' rights and without Plaintiffs' authority.

During opening statements at trial, Defendants' counsel stated that a three-year statute of limitations applies to the conversion claim, and maintained that Plaintiffs have to show that funds were converted within three years before November 20, 2013–the date the action was filed in state court. *See* Trial Transcript ("Tr.") at 27. Defendants did not urge this defense in their initial post-trial brief, arguably waiving the defense. However, Plaintiffs raised it in their post-trial submission, and Defendants then addressed it in their reply. *See* Plaintiffs' Post Trial Memorandum of Law, at 21-22; Defendants' Post Trial Reply Memorandum of Law ("Defendants' Reply"), at 14-15. Even assuming the defense was not waived, it fails. Under New York law, a conversion claim is governed by a three-year statute of limitations, running from the date of the conversion. *Vigilant Ins. Co. of Am. v. Housing Auth. of El Paso, TX*, 87 N.Y.2d 36, 44 (1995). To the extent Defendants imply that Plaintiffs have the burden of proof, *see* Tr. 27; Defendants' Reply, at 14-15, they are wrong. Rather, as noted above, Defendants have the burden of establishing this affirmative defense. *See Staehr*, 547 F.3d at 425. Defendants failed to show that no funds were converted on or after November 20, 2010. Indeed, as found above, Plaintiffs performed work through 2011, and funds paid into the Lock Box Account by IBM, SCA, and DOF for work performed under the DOE Contract and IBM Contract were transferred to WFCF through February 2012. *See* Tr. 34; JS ¶¶ 46, 48.

Accordingly, Plaintiffs have established their conversion claim.

D.  Liability of WF

Defendants argue that a bank may be liable only if it was a "knowing participant" in the diversion, and maintain that WF was not a knowing participant but a "mere conduit" following instructions from its account holder, Teltronics.  Plaintiffs maintain that WF was no "mere conduit," but that it and/or its predecessor, Wachovia, knew or should have known of the trust nature of the funds in the Lock Box Account.

A bank, such as WF, may be liable for diversion if it participated in the diversion by either acquiring an advantage or benefit directly from or through the diversion *or* joining in the diversion when it knew or should have known of the trust nature of the funds it received—that is, if the circumstances are such that it should have inquired into the origin of the funds and thereby discovered the trust nature of those funds.  *Bischoff v. Yorkville Bank*, 218 N.Y. 106, 112 (1916); *Fogarty v. City of Albany*, 157 Misc. 30, 31, 283 N.Y.S. 228, 229 (Sup. Ct., Albany Cnty. 1935); *see also Grace v. Corn Exch. Bank Trust Co.*, 287 N.Y. 94, 105 (1941) ("If the bank chooses to ignore completely the facts which indicate that the debtor is using moneys which may not belong to him, and accepts payment careless whether or not the moneys paid belong to him, it becomes morally and legally a participant in the debtor's wrong."); *Ben Soep Co. v. Highgate Hall of Orange Cnty., Inc.*, 142 Misc. 2d 45, 51, 535 N.Y.S.2d 1018, 1022 (Sup. Ct., Monroe Cnty. 1988) ("[T]his Court holds that a bank, which participates in a diversion of trust assets, under the Lien Law, may be held liable to the beneficiaries premised upon either actual or constructive knowledge."); *cf. Fleck v. Perla*, 40 A.D.2d 1069, 1070, 339 N.Y.S.2d 246, 248-49 (4th Dep't 1972) (observing that knowledge "of a trustee's violation of trust conditions and requirements will be chargeable to one dealing with the trustee, if the facts are such as, in reason, should put a

reasonably intelligent and diligent person on inquiry, and require him to make an investigation, the result of which would reveal the true situation," and holding that defendant—officer of corporate transferee—may be personally liable for converting trust funds if "defendant knowingly participated in the diversion of trust funds, or that at least the facts were such that he should have inquired into the origin of the funds he received" (quotation marks omitted)).  The facts demonstrate that WFCF should have known—through appropriate inquiry—of the trust nature of funds it received from WF through the Lock Box Account, particularly given its awareness that Teltronics was a telecommunications contractor to, among others, public entities in New York, and that Teltronics contracts serving as collateral for Teltronics loans included contracts for construction of New York City public schools.  Likewise, WF should have known—through appropriate inquiry—of the trust nature of millions of dollars in funds it received in the Lock Box Account and dispersed to WFCF, particularly given (1) the sophisticated banking relationship that it (and its predecessor Wachovia) established and maintained with Teltronics and its affiliate WFCF pursuant to the Lock Box Account Control Agreement, through which it earned fees and furthered its banking and WFCF's lending interests; (2) that its affiliate, WFCF, was aware that Teltronics was a telecommunications contractor to, among others, public entities in New York, and that Teltronics contracts serving as collateral for Teltronics loans included contracts for construction of New York City public schools; and (3) that it and Wachovia were aware that they received in the Lock Box Account millions of dollars in payments from public entities in New York, including the "New York City School Construction Authority," on behalf of Teltronics, a customer they must have known was a telecommunications contractor for, among others, public entities in New York.  Defendants, both

sophisticated financial institutions, cannot shield themselves from liability by conveniently ignoring the New York Lien Law and the trust nature of the funds at issue. Accordingly, both Defendants are liable to Plaintiffs for the Lien Law and conversion claims.

E. Laches Defense

Defendants argue that Plaintiffs' claims are barred by laches based on Plaintiffs' failure to raise their claims in the Teltronics Bankruptcy Case, resulting in material prejudice to WFCF and WF. The defense of laches requires a defendant to establish that a plaintiff, in asserting its rights, "was guilty of unreasonable delay that prejudiced the defendant[]." *Stone v. Williams*, 873 F.2d 620, 623 (2d Cir.), *vacated on other grounds*, 891 F.2d 401 (2d Cir. 1989); *Moreschi v. DiPasquale,* 58 A.D.3d 545, 545, 872 N.Y.S.2d 108, 109 (1st Dep't 2009). Defendants have failed to show that any delay by Plaintiffs has been "unreasonable" and caused them to suffer material prejudice, making recovery by Plaintiffs inequitable.

Accordingly, Plaintiffs' claims are not barred by laches.

CONCLUSION

For the above reasons, Plaintiffs are entitled to judgment against Defendants for $1,700,878.16, plus applicable interest, together with costs and disbursements. The parties have

not fully briefed the issue of Plaintiffs' entitlement to an award of attorney's fees.  Accordingly,

the parties are directed to contact Chambers regarding further proceedings.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
      July 31, 2017